Ira Spiro, SBN 067641
ispiro@spiromoss.com
Gregory N. Karasik, SBN 115834
greg@spiromoss.com
SPIRO MOSS BARNESS LLP
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Telephone    310-235-2468
Fax:         310-235-2456

Attorneys for Plaintiff
JONELLE LEWIS

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONELLE LEWIS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> STARBUCKS CORPORATION, <br><br> Defendant. | ) Case No. 2:07-CV-00490-MCE-DAD <br> ) <br> ) **CLASS ACTION** <br> ) <br> ) **MEMORANDUM OF POINTS AND** <br> ) **AUTHORITIES IN SUPPORT OF** <br> ) **PLAINTIFF'S MOTION FOR FINAL** <br> ) **APPROVAL OF CLASS ACTION** <br> ) **SETTLEMENT** <br> ) <br> ) Date:   December 5, 2008 <br> ) Time:  9:00 a.m. <br> ) Ctrm:  7 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    SUMMARY OF SETTLEMENT TERMS . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     RESPONSE OF CLASS MEMBERS TO NOTICE OF THE
        SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.      THE SETTLEMENT MERITS FINAL APPROVAL . . . . . . . . . . . . . . . . . 4

        A.    The Settlement Resulted From Serious, Informed,
              Non-collusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    The Settlement Provides Substantial Benefits For Class Members . . 7

        C.    Class Counsel Is Experienced In Wage And Hour Class Actions . . . 7

        D.    The Requested Amount Of Attorney's Fees Is Reasonable . . . . . . . . 8

        E.    Settlement Administration Costs Are Reasonable . . . . . . . . . . . . . . . 9

        F.    An Enhancement Of $5,000 To Plaintiff Is Reasonable . . . . . . . . . . 10

        G.    Payment of Monies to the LWDA Is Reasonable . . . . . . . . . . . . . . 10

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

Federal Cases

*Acosta v. Trans Union LLC,*
(C.D. Cal. 2007) 243 F.R.D. 377 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Armstrong v. Board of School Directors of the City of Milwaukee,*
(6th Cir. 1980) 616 F.2d 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Glass v. UBS Financial Services, Inc.,*
(N.D. Cal. 2007) 2007 WL 221862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hanlon v. Chrysler Corp.,*
(9th Cir. 1998) 150 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Cendant Corp., Derivative Action Litigation,*
(D. N.J. 2002) 232 F.Supp.2d 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Compact Disc Minimum Advertised Price Antitrust Litigation,*
(D. Me. 2003) 216 F.R.D. 197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Immune Response Securities Litigation,*
(S.D. Cal. 2007) 497 F.Supp.2d 1166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Mfrs. Life Ins.,*
(S.D. Cal. 1998) 1998 WL 1993385 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Southern Ohio Correctional Facility,*
(S.D. Ohio 1997) 175 F.R.D. 270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ingram v. The Coca-Cola Co.,*
(N.D. Ga. 2001) 200 F.R.D. 685 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Linney v. Cellular Alaska Partnership,*
(N.D. Cal. 1997) 1997 WL 450064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco,*
(9th Cir. 1982) 688 F.2d 615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Paul, Johnson, Alston & Hunt v. Graulty,*
(9th Cir. 1989) 886 F.2d 268, 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Six Mexican Workers v. Arizona Citrus Growers,*
(9th Cir. 1990) 904 F.2d 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Staton v. Boeing Co.,*
(9th Cir. 2003) 327 F.3d 938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Van Bronkhorst v. Safeco Corp.,*
(9th Cir. 1976) 529 F.2d 943 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Van Vranken v. Atl. Richfield Co.,*
(N.D. Cal. 1995) 901 F. Supp. 294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vizcaino v. Microsoft Corp.*,
   (9th Cir. 2002) 290 F.3d 1043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure
   Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
   Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
   Rule 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6
   Rule 23(e)(C)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   Rule 23(e)(C)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Business and Professions Code Section 17203 . . . . . . . . . . . . . . . . . . . . . . . . . 1

Labor Code Private Attorneys General Act of 2004 . . . . . . . . . . . . . . . . . . . . . 1, 10

Labor Code
   Section 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   Section 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10
   Section 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Other Authorities

Manual for Complex Litigation § 1.46, at 53-55 (West 1977) . . . . . . . . . . . . . . . 4

1   **I.   INTRODUCTION**

2       On September 11, 2008, this Court granted preliminary approval of the class action

3   settlement (the "Settlement") reached by plaintiff Jonelle Lewis ("Plaintiff") and defendant

4   Starbucks Corporation ("Starbucks"). The Settlement obligates Starbucks to pay up to

5   $3,000,000 (the "Gross Settlement Amount") to resolve claims for reimbursement of mileage

6   expenses asserted on behalf of store managers, assistant store managers, and shift supervisors

7   who worked from Starbucks between March 12, 2003 and March 19, 2008.

8       Following preliminary approval of the Settlement, the Settlement Administrator mailed

9   notice of the Settlement and claim forms to approximately 30,000 class members. To date,

10  approximately 6,000 class members have submitted a claim form. (Paul Declaration, ¶ 9, 13).

11  Pursuant to the Settlement, 25% of the net settlement amount will be distributed to class

12  members who, on average, will receive approximately $86 (Karasik Declaration in Support of

13  Final Approval, ¶4). Only 18 class members requested to opt out of the Settlement, and not a

14  single class member has objected to the Settlement. (Paul Declaration ¶ 15, 16).

15      The Settlement provides substantial monetary benefits to class members and is the

16  product of diligent efforts of Plaintiff's counsel to obtain the best possible result for the class.

17  Because the Settlement is fair, adequate, and reasonable, and is the product of extensive, arms'

18  length negotiations between counsel experienced in wage and hour class action litigation, final

19  approval of the Settlement should now be granted.

20  **II.   BACKGROUND**

21      Plaintiff commenced this action on March 12, 2007. In the operative complaint, Plaintiff

22  asserts class action claims against Starbucks for reimbursement of business expenses under

23  Labor Code Section 2802, waiting time penalties under Labor Code Section 203, restitution

24  under Business and Professions Code Section 17203, and civil penalties under Labor Code

25  Section 2699 *et seq*, the Labor Code Private Attorneys General Act of 2004 ("PAGA").

26      Shortly after filing the complaint, Plaintiff propounded interrogatories and document

27  requests which required Starbucks to spend substantial time and effort interviewing various

28  employees and analyzing its compliance efforts with Labor Code Section 2802. Plaintiff also

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1   filed a motion to compel Starbucks to provide the names and addresses of class members after

2   Starbucks objected to disclosure of that information. After the Court granted Plaintiff's motion,

3   but before Starbucks provided Plaintiff with the names and addresses of class members,

4   Starbucks expressed a willingness to mediate. The mediation did not take place until after

5   Starbucks took Plaintiff's deposition. Armed with sufficient information to assess their relative

6   strengths and weaknesses, the parties thereafter agreed to suspend further discovery pending

7   mediation, and participated in a day-long mediation before the Honorable Edward A. Infante,

8   United States Magistrate Judge (Ret.) on December 7, 2007. The mediation involved extensive,

9   arms-length negotiations. Numerous offers and counter offers were exchanged before settlement

10  terms were achieved. The final settlement terms were recommended by Judge Infante after his

11  review of lengthy mediation briefs submitted by Plaintiff and Starbucks, which discussed in

12  detail the legal and factual issues in the case. This Court granted preliminary approval of the

13  Settlement on September 11, 2008.

14  **III.    SUMMARY OF SETTLEMENT TERMS**

15  •      The settlement class is defined as follows:   "All persons employed by Starbucks in the

16         job categories of shift supervisor, assistant store manager, or store manager within the

17         state of California during the period from March 12, 2003 until March 19, 2008."

18  •      Starbucks will settle the action for a maximum payment (the "Gross Settlement Amount")

19         of Three Million Dollars ($3,000,000);

20  •      After settlement administration expenses, attorney's costs and fees, payment to the

21         California Labor and Workforce Development Agency, and enhancements are deducted

22         from the Gross Settlement Amount, the remainder shall be multiplied by a Participation

23         Rate to yield the Net Settlement Amount available for distribution to class members;

24  •      The Participation Rate shall be the number of workweeks for all class members who

25         submit claims divided by the total number of workweeks for all class members;

26  •      Regardless of the number of class members who submit claims, no less than 25% of the

27         Net Settlement Amount will be distributed to claimants.

28  •      The Net Settlement Amount shall be distributed to class members who timely submit a

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

claim form; class members shall attest on the claim form that they incurred reimbursable mileage expenses during the class period but were not reimbursed for those expenses;

• There will be three levels of payment to class members; the amount of payment for any class member shall correspond to the number of miles driven by the class members as indicated on his or her claim form;

• Twenty-Five Thousand Dollars ($25,000) shall be paid to the Labor Workforce Development Agency ("LWDA");

• Starbucks shall communicate its reimbursement policy to store employees by including the policy in the next edition of the employee handbook which is distributed to new-hires and available to current employees;

• Starbucks will not oppose an application by Plaintiff for an award of attorney's fees and costs up to 25% of the Gross Settlement Amount; and

• Starbucks will not oppose an application by Plaintiff for an enhancement of up to Five Thousand Dollars ($5,000) to the named Plaintiff.

## IV. RESPONSE OF CLASS MEMBERS TO NOTICE OF THE SETTLEMENT

Pursuant to this Court's order, the Settlement Administrator mailed out the court approved class notice, claim form and request for exclusion form to 30,018 class members on September 25, 2008. (Paul Declaration, ¶ 9). The Settlement Administrator mailed out a reminder post card to 29,335 class members on October 10, 2008. (Paul Declaration, ¶ 10). Only 18 class members opted out of the Settlement and no class members have filed objections to the Settlement. (Paul Declaration ¶ 15, 16).

Approximately 6,000 class members submitted claims forms and, upon final approval of the settlement, 25% of the net settlement amount (approximately $515,000) will be distributed to class members. (Paul Declaration, ¶ 13). Class members who submitted valid claims will receive the gross amounts of approximately $36 for driving less than 100 miles, $72 for driving between 100 and 200 miles, or $110 for driving more than 200 miles. (Karasik Declaration in Support of Final Approval, ¶ 3). On average, class members who submitted valid claims will receive the gross amount of $86 each. (Karasik Declaration in Support of Final Approval, ¶ 4).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

1   **V.    THE SETTLEMENT MERITS FINAL APPROVAL**

2        The law favors settlement, particularly in class actions and other complex cases where

3   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

4   *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F.2d 943, 950.  These concerns apply with

5   particular force in a case such as this where an allegedly illegal practice affected tens of

6   thousands of employees.  Rule 23(e)(C)(1) of the Federal Rules of Civil Procedures provides that

7   a court may approve a settlement of a class action only when it finds after a hearing that the

8   settlement is "fair, reasonable, and adequate," and Rule 23(e)(C)(4) provides that any class

9   member may object to a proposed settlement.  Judicial  review of a class action settlement thus

10  entails a two step process.  "The first step is a preliminary, pre-notification hearing to determine

11  whether the proposed settlement is 'within the range of possible approval.'  This hearing is not a

12  fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class

13  members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v.*

14  *Board of School Directors of the City of Milwaukee* (6th Cir. 1980) 616 F.2d 305, 314 [quoting

15  Manual for Complex Litigation § 1.46, at 53-55 (West 1977)].  The first step of the approval

16  process has been completed.  The Court granted preliminary approval of the Settlement on

17  September 11, 2008 and class members have been given notice of the Settlement.

18       At the second stage of the approval process, after class members have had an opportunity

19  to object to the settlement, the court makes a final determination whether the settlement is "fair,

20  reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.  In this regard, a court

21  undertakes two fundamental inquiries. "First, the district court must assess whether a class

22  exists." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 952.  In other words, the court must

23  determine that the lawsuit qualifies as a class action under Rule 23 to begin with.  *See, e.g.,*

24  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1022 (reviewing settlement to ensure

25  compliance with requirements of Rule 23(a) and Rule 23(b)(3)).  Second, the court must

26  determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952.

27  As summarized by one Court recently, when parties reach a settlement agreement prior to class

28  certification, "courts must peruse the proposed compromise to ratify both the propriety of the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1  certification and the fairness of the settlement." *Acosta v. Trans Union LLC* (C.D. Cal. 2007)
2  243 F.R.D. 377, 383.

3  In its order granting preliminary approval, the Court recognized why this case merits class
4  action treatment under Rule 23(a) and Rule 23(b)(3). Because there is no reason to revisit the
5  propriety of class certification, Plaintiff does not address that issue further but devotes the
6  remainder of this brief to explaining why the Settlement meets the requirements of Rule 23(e).

7  Whether a class action settlement is fair, reasonable and adequate does not turn on any
8  single criterion. The Ninth Circuit has directed district courts to consider a variety of factors
9  without providing an "exhaustive list" or suggesting which factors are most important. *See,*
10 *Staton,* 327 F.3d at 959. "The relative degree of importance to be attached to any particular
11 factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of
12 relief sought, and the unique facts and circumstances presented by each individual case."
13 *Officers for Justice v. Civil Service Commission of City and County of San Francisco* (9th Cir.
14 1982) 688 F.2d 615, 625.

15 Due to the impossibility of predicting any litigation result with certainty, a district court's
16 evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate
17 balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625
18 [citation omitted]. The ultimate touchstone, however, is whether "class counsel adequately
19 pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit
20 explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is
21 therefore tailored to meet that narrow objective. Review under Rule 23(e) "must be limited to
22 the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud
23 or overreaching by, or collusion between, the negotiating parties." Accordingly, the Ninth
24 Circuit will not reverse a district court's approval of a class action settlement "unless the fees and
25 relief provisions clearly suggest the possibility that class interests gave way to self interest."
26 *Staton*, 327 F.3d at 961.

27 Here, after sufficient discovery enabled counsel to form educated opinions about the
28 value of the case, the parties reached a non-collusive settlement that provides significant benefits

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1  to a sizeable number of class members. Final approval of the Settlement will result in

2  approximately 6.000 class members receiving gross payments between $36 and $110 each. Since

3  obtaining class certification and establishing liability posed difficult hurdles for Plaintiff that

4  justified compromise of her claims, the Settlement falls well within the range of reasonable

5  outcomes and merits approval under Rule 23(e).

6  **A.    The Settlement Resulted From Serious, Informed, Non-collusive Negotiations**

7        This Settlement was reached following a series of extensive negotiations by counsel for

8  the respective parties and review of numerous documents. The parties participated in a full-day

9  mediation before the Honorable Edward A. Infante, United States Magistrate Judge (Ret.),  who

10  has mediated numerous employment law class action cases. Although Starbucks agreed to

11  mediate before Plaintiff completed her discovery, approval of a class action settlement does not

12  require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Securities Litigation*

13  (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174 (settlement approved where  informal discovery gave

14  the parties a clear view of the strength and weaknesses of their cases). The fact that settlement

15  results from arms length negotiations following "relevant discovery" creates "a presumption that

16  the agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL

17  450064, at *5.

18        In this case, the settlement negotiations were adversarial and non-collusive at all times.

19  Although Plaintiff believes strongly that this case is suitable for class treatment, Plaintiff

20  recognizes the risk that a motion for class certification might be denied, which would trigger an

21  appeal. On the other hand, if the Court granted a motion for class certification, Starbucks would

22  likely seek reversal of the certification on appeal. A judgment favorable to either side would

23  likely be subject to post-trial motions and appeal, delaying any potential benefits to the class.

24        In other words, continued litigation in this action would be complex, costly, and of

25  substantial duration. At mediation, the parties debated extensively over the merits of the case

26  and the likelihood of certification. With the assistance of Judge Infante, the parties reached an

27  arms-length compromise taking into account the risks of litigation, the probability of favorable

28  outcomes, and the probability of unfavorable outcomes.

1

**B.     The Settlement Provides Substantial Benefits For Class Members**

2      Class members who timely submitted claims will receive gross payments of $36 if they

3   drove less than 100 miles, $73 if they drove between 100 and 200 miles, or $110 if they drove

4   more than 200 miles.  In light of the difficulties Plaintiff faced in obtaining certification and

5   proving liability, Plaintiff obtained a very good result.  IRS mileage reimbursement rates ranged

6   between approximately 40-50 cents a mile during the class period and most Starbucks stores are

7   within extremely close proximity of banks, grocery stores or other Starbucks stores (Karasik

8   Declaration in Support of Preliminary Approval, ¶ 10).  Given the uncertainties regarding how

9   often class members drove for business related purposes and how far they drove, the high

10  percentage value received by class members who submitted claims reflects a fair compromise

11  well within the range of reasonableness.  *See, In re Cendant Corp., Derivative Action Litigation*

12  (D. N.J. 2002) 232 F.Supp.2d 327 (approving settlement which provided 2% value compared to

13  maximum possible recovery); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*

14  (D. Me. 2003) 216 F.R.D. 197 (approving settlement providing $13 to class members

15  overcharged an average of 23 cents).

16

**C.     Class Counsel Is Experienced In Wage And Hour Class Actions**.

17      Plaintiff's counsel is very experienced in wage and hour class action litigation.  They

18  have been successful in obtaining class certification on behalf of large groups of employees in

19  numerous wage and hour class action cases.  Spiro Moss Barness LLP, Plaintiff's lead counsel,

20  has been appointed as class counsel or co-lead counsel in over 50 (fifty) wage and hour class

21  action lawsuits involving prominent companies such as Starbucks, TJ Maxx, Sparkletts,

22  Mervyns, Linens-n-Things, and 24 Hour Fitness, among many others.  In addition, attorneys at

23  Spiro Moss Barness LLP have been involved in filing appeals, writs, and/or *amicus curiae* briefs

24  on issues directly related to wage and hour class actions, resulting in several published and

25  unpublished opinions, and are frequent authors and speakers for class action and wage and hour

26  seminars. (Declaration of Gregory N. Karasik in Support of Preliminary Approval, ¶ 4).

27  Plaintiff's counsel are eminently qualified to evaluate the class claims and viability of defenses in

28  this case.  Their opinion as to the reasonableness of the Settlement is entitled to great weight.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1

**D.    The Requested Amount Of Attorney's Fees Is Reasonable**

2     The compensation sought for Plaintiff's counsel is fair and reasonable. The Ninth Circuit

3  has directed that, to determine what constitutes a fair and reasonable percentage of the settlement

4  for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark"

5  percentage of 25% of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886

6  F.2d 268, 272; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047. In such cases,

7  calculation of attorney's fees is based on the amount of the common fund created whether or not all

8  the proceeds of the fund are distributed to class members. *See, Six Mexican Workers v. Arizona*

9  *Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311. Here, the total fund created through the efforts

10  of Plaintiff's counsel is $3,000,000. Adhering to the benchmark established by the Ninth Circuit,

11  Plaintiff's counsel has requested $750,000 for fees and costs, which equals 25% of the common fund.

12  Plaintiff's request comports with fee awards in comparable wage and hour class actions (Karasik

13  Declaration in Support of Preliminary Approval, ¶ 12, 13, Ex. 2).

14     In its order granting preliminary approval, this Court agreed that an attorney's fee award

15  based on a lodestar calculation would not be appropriate in this case because Plaintiff's counsel

16  obtained a favorable settlement early in the litigation. Without meaning to belabor the point,

17  Plaintiff briefly addresses this issue again now that class members have submitted claims.

18     The lodestar method "creates incentives for counsel to spend more hours than may be

19  necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not

20  reward early settlement." *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1050, n.5. The

21  Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the

22  reasonableness of fees based on a percentage of recovery method if a district court in its discretion

23  chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class

24  counsel should necessarily receive a lesser fee for settling a case quickly." *Id.*

25     In accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have

26  recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a

27  significant result through an early settlement. For example, in *Glass v. UBS Financial Services, Inc.*

28  (N.D. Cal. 2007) 2007 WL 221862, the court declined to conduct a lodestar cross check, and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL**

1    approved a request for fees based only on the percentage of recovery method, because it recognized

2    that premising attorney's fees on a lodestar calculation would have unfairly penalized plaintiff's

3    counsel for settling the case without protracted litigation. *See also, In re Mfrs. Life Ins.* (S.D. Cal.

4    1998) 1998 WL 1993385, at *10 (court concluded that lodestar analysis was unnecessary and

5    attorney's fee was reasonable solely on percentage-recovery method).

6         In this case, a lodestar calculation would not reward Plaintiff's counsel fairly for achieving

7    an excellent result on behalf of more than 30,000 class members. It is only fair that every class

8    member who stood to benefit from the settlement pay his or her pro rata share of attorney's fees.

9    Plaintiff seeks fees substantially less than the amount Plaintiff's counsel would be entitled to receive

10   if they represented each class member individually under their regular contingent fee contract, which

11   provides for attorney's fees between 35% and 40% of any recovery obtained for the client (Karasik

12   Declaration in Support of Preliminary Approval, ¶ 13). The Settlement provides an average gross

13   recovery of $100 per class member before attorney's fees are deducted. Since class members who

14   submit claims will receive, on average, approximately $86, the amount of attorney's fees effectively

15   paid by those class members is, on average, $14 or 14% of their gross recovery. Recovery in the

16   amount of $86 after attorney's fees reflects a gross recovery in the amount of $130 before deducting

17   attorney's fees based on a contingency fee of 35%. (Karasik Declaration in Support of Final

18   Approval, ¶ 4). The excellent result achieved by Plaintiff's counsel, at relatively small expense to

19   class members, merits an award of attorney's fees equal to 25% of the common fund in this case.

20        **E.    Settlement Administration Costs Are Reasonable**

21        The parties retained, and the Court approved, Rust Consulting, Inc. to serve as the Settlement

22   Administrator. The Settlement Administrator has performed its responsibilities in connection with

23   providing notice, claim forms and opt out forms, as well as keeping track of all the responses from

24   class members. The Settlement Administrator shall continue to do so, and upon final approval of

25   the Settlement, shall distribute settlement benefits to class members and, if necessary, provide a final

26   accounting. Based on the size of the class and the mechanics of claims administration, the fee to be

27   paid to the Settlement Administrator for its services, in the approximate amount of $160,000 (Paul

28   Declaration, ¶ 19), is reasonable.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1       **F.**     **An Enhancement Of $5,000 To Plaintiff Is Reasonable**

2       Plaintiff seeks a modest incentive award in the amount of $5,000. Incentive payments serve

3 to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing

4 themselves to the significant risks of litigation. "Courts routinely approve incentive awards to

5 compensate named plaintiffs for the services they provided and the risks they incurred during the

6 course of the class action litigation." *Ingram v. The Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685,

7 694; *In re Southern Ohio Correctional Facility* (S.D. Ohio 1997) 175 F.R.D. 270, 272. In *Coca-*

8 *Cola,* for example, the court approved incentive awards of $300,000 to each named plaintiff in

9 recognition of the services they provided to the class by responding to discovery, participating in the

10 mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola,* 200

11 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.* (N.D. Cal. 1995) 901 F. Supp. 294, 300

12 (approving $50,000 participation award). The modest incentive award sought by Plaintiff will have

13 minimal impact on the settlement benefits distributed to class members and falls well within the

14 range of incentive awards in comparable wage and hour class actions (Karasik Declaration in

15 Support of Preliminary Approval, ¶ 12, Ex. 2).

16       **G.**     **Payment of Monies to the LWDA Is Reasonable**

17       The parties have allocated $25,000 of the Settlement Fund for payment to the LWDA.

18 Under the Private Attorneys General Act of 2004 ("PAGA"). Labor Code Section 2699 et seq., 75%

19 of civil penalties awarded under PAGA are payable to the LWDA, and 25% are payable to the

20 aggrieved employees. In this case, Plaintiff sought to recover PAGA penalties in connection with

21 her reimbursement claims and Starbucks strongly disputed that it could be held liable for any civil

22 penalties. The parties' decision to allocate $25,000 of the Settlement to the LWDA is fair and

23 reasonable

24 **VI.**    **CONCLUSION**

25       Without engaging in protracted litigation, Plaintiff obtained a Settlement that provides

26 approximately 6,000 class members with substantial value on their small claims for reimbursement

27 of mileage expenses. Since the Settlement is fair, reasonable and adequate in all respects, the Court

28 should grant Plaintiffs' motion for final approval of the Settlement. In granting the final approval,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL**

1  the Court should grant Plaintiff's request for attorney's fees and costs in the amount of $750,000

2  pursuant to the percentage of recovery method endorsed by the Ninth Circuit.  For achieving an

3  exceptional result quickly and at nominal expense to class members, Plaintiff's counsel is entitled

4  to 25% of the common fund obtained on behalf of all class members.

5

6  Dated: November 14, 2008                    SPIRO MOSS BARNESS LLP

7
                                         By: _____
8                                             Gregory N. Karasik

9                                             Attorneys for Plaintiff
                                             JONELLE LEWIS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL**